IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:00-783-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| KEITH DEMOND INGRAM | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 152).[2] Unlike most motions for compassionate release filed with this court, the defendant does not point to any medical problems or the ongoing COVID-19 pandemic as the basis for his motion.[3] He acknowledges that he "has no known chronic illness" and "is able bodied and healthy." Rather, he suggests that substantial changes in sentencing law that have been enacted by Congress or recognized by the appellate courts would result in a substantially lower time of incarceration if he were sentenced today.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

[2] This court denied the defendant's original motion for compassionate release because the defendant's motion to vacate or correct his sentence pursuant to 28 U.S.C. § 2255 was on appeal. In an order filed February 25, 2021, this court vacated the denial order and reinstated the motion for compassionate release, opting to defer ruling upon the motion until the appeal was resolved. After the Fourth Circuit Court of Appeals issued its mandate, this court restarted the briefing process on the current motion.

[3] In his motion, the defendant does not suggest that he suffers from medical issues that would be exacerbated by the presence of the COVID-19 pandemic. He does, however, mention the COVID-19 pandemic in passing as a partial ground for relief. The court must reject the motion to the extent it is grounded upon the existing pandemic. This court is satisfied that sufficient safeguards have been put in place by the Bureau of Prisons to minimize the risk.

FACTUAL BACKGROUND

The defendant was one of two defendants charged with a September 2000 robbery of a restaurant in Lancaster, South Carolina. The defendant and his associate entered the restaurant, ordered everyone to get down on the floor, and took the cash register drawer and the owner's pocketbook. The defendants left the restaurant with approximately $2,075 in cash. Following a short chase, both defendants were apprehended.

On November 8, 2000, a federal grand jury filed a four-count indictment charging the defendant and his codefendant (Twitty) with robbery and firearms offenses. The defendant was charged with the following:

- Count 1: Robbery by means of actual and threatened force, in violation of 18 U.S.C. §§ 1951(a) and 2;

- Count 2: Using, carrying, brandishing, and possessing a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924 (c)(1) and 2; and

- Count 4: Being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a).

Although the defendant elected to go to trial before a jury, his co-defendant (Twitty) pleaded guilty. The defendant's first trial resulted in a hung jury and in the ensuing second trial, the jury found the defendant guilty on all three counts cited above.

The Presentence Report (PSR) (filed Sept. 11, 2001) calculated the defendant's offense level at 32 as to Counts 1 and 4, and his criminal history category was VI. The defendant was determined to be a career offender.

On September 19, 2001, this court sentenced the defendant to 240 months on Count 1 (Hobbs Act armed robbery); 18 months on Count 4; and 84 months on Count 2, for a total of 342 months, with all sentences on each Count to run consecutively.

Following an unsuccessful appeal to the Fourth Circuit Court of Appeals,[4] the defendant has filed at least four motions under 28 U.S.C. § 2255 to vacate or set aside his sentence, all of which have been denied by this court.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the

---

[4] *United States v. Ingram*, 43 F. App'x 706 (4th Cir. 2022).

federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (I) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found

4

that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's

term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf.

Here, the government acknowledges that the defendant has exhausted his administrative remedies with the Warden. Accordingly, the court will proceed to review the defendant's motion on its merits.

DISCUSSION

The defendant advances various arguments within his numerous filings in support of his request for compassionate release. Many of these arguments lack merit. However, the defendant's assertion that his sentence today would be markedly different than that originally received is worthy of consideration. Accordingly, the Court will focus on those grounds supporting this argument.

I.   *Defendant's Challenge to His Sentence Enhancement and Career Offender Enhancement*

To begin with, the government concedes that the defendant is correct in his assertion that the decision of the United States Supreme Court in *Alleyne v. United States*, 570 U.S.

93 (2013) would affect the defendant's sentence today. *Alleyne* required that any fact that increases a mandatory minimum sentence for a crime is an "element" of the crime, not a sentencing factor, that must be submitted to the jury.

Here, regarding the § 924(c) charge, the question of whether the defendant "brandished" a gun was not, in fact, submitted to the jury. Rather, this court made that factual determination at the sentencing hearing that the defendant did brandish a firearm. The government concedes that this now constitutes error. The government also agrees that if the enhancement for brandishing the firearm were removed from the defendant's Presentence Report (PSR), it would result in a sentence reduction of 24 months.

A second contention with the defendant's sentencing arises from the fact that the defendant was determined to be a career offender under the then-applicable Guidelines. With recent changes in the sentencing law, at least one of the two required predicate offenses[5] for the defendant's career offender status would no longer qualify.[6]

If the career offender designation was removed from the defendant's PSR calculation, his criminal history category would be reduced from VI to III. His total offense level would

---

[5] That crime being trafficking cocaine under South Carolina Law. *See United States v. Hinson*, 363 F. App'x 998, 1000 (4th Cir. 2010)("This statute [S.C.Code § 44–53–370(e)(2)] may be violated both by conduct that falls within the ACCA definition of "serious drug felony" and conduct that does not fall within the definition.").

[6] The government has conceded that following the decision in *United States v. Green*, 996 F.3d 176 (4th Cir. 2021), the defendant would not have been considered a career offender for violating the Hobbs Act statute (Count 1). In *Green*, the Fourth Circuit held that a Hobbs Act robbery is not a crime of violence under the career offender guidelines. However, the defendant would still qualify as a career offender under the § 924(c) charge (Count 2).

7

be reduced from 32 to 26. This would result in a much lower Guideline range for the defendant if sentenced today. Specifically, an offense level of 32 with a criminal history category of VI yields a range of 210–262 months. Conversely, an offense level of 26 with a criminal history category of III yields a range of 78–97 months.

This court acknowledges that under *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), it is authorized, in compassionate release cases, to examine the sentence the defendant would receive today as compared with the sentence actually imposed at the time of conviction even though the intervening changes in the law are not retroactive.

As noted above, removing the defendant's career offender enhancement from his Guideline calculations results in a reduction of the low end of the Guidelines by 132 months. Removing the brandishing element from his § 924(c) conviction (as a result of *Alleyne*) would eliminate another 24 months. *McCoy* did not, however, require that this court reduce a defendant's sentence based upon the mere difference in Guideline calculations.

The *McCoy* court also emphasized certain factors when calling for the need for "individualized assessments." These factors included the defendants' youth at the time of the offenses, their lack of significant prior criminal history, their exemplary behavior and rehabilitation in prison, and their already-substantial years of incarceration.[7]

---

[7] Specifically, the *McCoy* defendants were in their early 20s when they committed the offenses of conviction and had relatively no criminal record. Additionally, those defendants had spent substantial years incarcerated (17–25 years). The unstacking of the § 924(c) sentences in *McCoy* resulted in a reduction from 45 years to 15 years (a 66% reduction) for some defendants and a reduction of 200 months for another.

The facts presented here contain noticeable similarities to those emphasized in *McCoy*. Initially, the defendant has no history of disciplinary infractions while incarcerated for more than 20 years. Additionally, the defendant has availed himself of numerous opportunities to better himself as evidenced by the great many vocational credits obtained while incarcerated. One factor that carries significant weight in this instance is the fact that the defendant has served over 20 years and has an anticipated release date of July 8, 2025.

Conversely, the court would note that several facts of this case vary from those presented in *McCoy*. Defendant McCoy was only 19 years old at the time of the commission of his crime and his only prior conviction was for reckless driving. In the other three cases involved in the *McCoy* decision, the defendants were between 22 and 24 years old at the time of their offenses. One of those defendants had no criminal history and another had one minor prior conviction for which he served no jail time.

In the case before this court, the defendant was 28 years old when he committed the offenses of conviction and he has prior convictions for assault with intent to kill and trafficking cocaine.

Thus, although Ingram's individualized assessment contains noticeable differences from the defendants in *McCoy*, he nonetheless makes a commendable case for compassionate release based upon certain similarities emphasized by the Fourth Circuit. Here, the court is persuaded that those similarities outweigh the differences. In other words, when taken together, these changes in sentencing law yield to the court's conclusion that the defendant's

motion for compassionate release is meritorious and that the defendant has presented an extraordinary and compelling reason for consideration of his release.

Although the government concedes in part that the defendant is correct with regard to changes in sentencing law, it avers that the defendant should nevertheless serve the rest of his remaining sentence. The government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release.

II.     *Factors under § 3553(a)*

A determination that the defendant has demonstrated extraordinary and compelling reasons for consideration of his release does not end the court's inquiry. Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a) factors, and also with review of the defendant's post-sentencing conduct while incarcerated. The court will address the § 3553(a) factors in turn.

1. *Nature and Circumstances of the Offense*. The nature and circumstances of the defendant's offense is discussed in depth above and incorporated herein.

2. *History and Characteristics of the Defendant*. The defendant was born in 1972 in Lancaster, South Carolina. He has two brothers and was raised in a lower middle class socioeconomic family where all his physical and psychological needs were met. He was an average student in school making Bs and Cs and was on the baseball and football teams. He quit high school to enter the work force because his mother needed help and he wanted to

take care of himself. The defendant is single and has never been married. He has fathered 3 children, but he does not pay child support for these children. He has one other child from a previous relationship and had been ordered to pay child support but was in arrears at the time of his sentence. The defendant has used marijuana periodically since the age of 12.

*Post Sentencing Conduct*

The defendant is currently 50 years old—an age at which many individuals do not recidivate. He has been incarcerated since the year 2000. He is scheduled to be released in July 2025 and is presently housed at the U.S. Penitentiary in Yazoo City, Mississippi. He has served the vast majority of his 342-month sentence imposed by this court.

Moreover, the defendant has not incurred any disciplinary infractions while incarcerated which is rare with inmates who face long sentences.

Additionally, the defendant has taken a wide variety of vocational and educational courses that are designed to rehabilitate his conduct and ease his transition back into society.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment. Given the circumstances of this case, the court believes that the 22 years defendant has served is a just punishment for the offense.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents. However, further incarceration is unlikely to provide much more deterrence given the defendant's advanced age and time already served.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. However, as stated above, the risk of recidivism is reduced with the defendant's relevant age. Here, defendant is 50 and therefore there is less need for protection from future crimes.

7. *Need to Avoid Unwarranted Disparity*. Compared with the culpability of similarly situated defendants, the defendant's imposed sentence was and is in line with statutory factors.

CONCLUSION

This court concludes that if the defendant were sentenced today, his sentence would be drastically different from the one imposed in 2001. Accordingly, the court determines that the defendant has established an extraordinary and compelling reason for his release, that being the lower sentencing regime today.

Further, the court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. Because the defendant is nearing the end of the lengthy sentence imposed by this court, and because he is of

advanced age and has no disciplinary infractions, coupled with many vocational and educational courses while incarcerated, the court will grant the defendant's motion and order his immediate release.

This court has conducted an individualized review of the facts in this case, including the offense of conviction, the § 3553 factors, the defendant's post sentencing conduct, and the recent changes in sentencing laws, and has determined that defendant's immediate release is appropriate. Accordingly, the defendant's motion for compassionate release is granted (ECF No. 152).

For the reasons outlined above in this order, the custodial portion of the defendant's sentence is reduced to time served. This order shall be stayed for a period of 10 days to allow the Bureau of Prisons to administratively process the defendant's release. All other provisions of the original sentence remain in full force and effect.

IT IS SO ORDERED.

August 1, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge